**FILED**

2:42 pm, 12/16/21

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

———————————————

MORGAN MURPHY,

     Plaintiff and Counterclaim Defendant

vs.

MATTHEW KAUTZ,

     Defendant and Counterclaimant

Case No.  20-CV-179-F

---

ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Defendant Matthew Kautz moves for partial summary judgment on all but one of Plaintiff Morgan Murphy's six claims.  ECF Nos. 30 (motion), 31 (memorandum and exhibits).  Plaintiff opposes.  ECF No. 36 (response and exhibits).  Defendant has replied. ECF No. 37.  As follows, the motion is granted as to Plaintiff's first and second claims, and denied as to her third, fourth and fifth claims.

I.    *Relevant Facts*

In his motion, Defendant asserts the following facts are undisputed.

Plaintiff and Defendant were involved in an intimate romantic relationship and lived together in Lander, Wyoming from May 2018 to September 2018.  Plaintiff worked that summer as a bank teller at US Bank. Defendant worked that summer at the National Outdoor Leadership School (NOLS) pantry that supplied backpackers and NOLS students with food for their wilderness adventures.  Plaintiff and Defendant had consensual sex that summer.

During the summer of 2018, both Plaintiff's and Defendant's parents visited them in Lander.  In September 2018, Plaintiff contacted Defendant's

parents and said she was worried about him, as Defendant failed to find a
permanent job in Lander and Plaintiff was worried that Defendant was
depressed. Defendant's father, Dan Kautz, traveled to Lander to pick his son
up and transport him back to Tucson, Arizona.

In May 2019, Plaintiff filed for a Protection Order in Albany County,
Wyoming against Defendant while [he] was living in Tucson, Arizona.
Plaintiff, via her mother and her attorney, was able to contact Defendant and
advise him of the Petition. In response, Defendant hired an attorney and had
representation at the Protection Order Hearing. Despite easily serving the
Petition for Protection Order on Defendant, Plaintiff made no attempt to sue
Defendant for battery at that time.

Plaintiff filed her Complaint in this case on September 18, 2020, over
two years after the dates of the alleged batteries in this case. Compl. [ECF
No. 1]. In her Complaint, in addition to her claims for battery, Plaintiff
generally alleges that Defendant intentionally caused her emotional distress
and sexually assaulted her. Defendant denies those allegations and asserts
that Plaintiff's claims are a groundless attempt to extract money from
Defendant's parents, whom Plaintiff believes are wealthy individuals.

ECF No. 31 (record and docket citations omitted).

Plaintiff did not directly respond to Defendant's statement of facts. She provides

her own statement of facts as follows.

In September 2017, Morgan Murphy met Matthew Kautz on a group
trip to New Zealand. The two initially hit it off and began an intimate
relationship. When they returned to the United States, the relationship
continued. First, he visited her for a few days at her parents' house. Then,
she visited him for a few days in Los Angeles. In May 2018, Mr. Kautz
moved into Ms. Murphy's apartment in Lander, Wyoming. This would begin
a gradual process by which Mr. Kautz used threats and increasing physical
violence as a tactic to coerce Ms. Murphy into a state of sexual submission.

Beginning about a week after he moved in with Ms. Murphy, Mr.
Kautz began introducing physical violence into sexual intercourse. At about
the same time, he began threatening to punch Ms. Murphy. On May 24,
2018, Mr. Kautz became physically violent with Ms. Murphy outside of a
sexual context, punching her in the stomach. Ms. Murphy testified that Mr.
Kautz appeared to obtain sexual gratification from being aggressive towards
her and making her feel helpless.

On May 28, 2018, Mr. Kautz tried to have sex with Ms. Murphy, but
she repeatedly refused. He began masturbating despite her indication that
she did not want to have sex. After she tried to leave the situation, Mr. Kautz

sent Ms. Murphy a series of sexually explicit 4 [*sic;* text messages] indicating that he was fantasizing about having sex with a young child who could not consent. [Ex. 4 ("Your like and adult (sic)"; "Do u feel safe with me (sic)"; "I want to have sex but not until your 16 (sic)"; "Let's keep this secret."]. He then stormed into the bedroom and lunged at Ms. Murphy, who broke her hand in an effort to protect herself.  After Ms. Murphy's hand was broken, she became physically helpless, and Mr. Kautz began raping and abusing her regularly.  She did not call police or seek help for a period of approximately four-and-a-half months because he threatened that he would kill her, kill himself, or otherwise ruin her life.

Plaintiff asserts several further facts in the argument section of her brief: details regarding Defendant's alleged introduction of physical violence in sexual intercourse, hiding of knives around the apartment and approaching her with them, threats of violence or ruin, and Plaintiff's eventual response of sexual submission out of fear that Defendant would act on his threats.

As best the Court understands from the briefing and exhibits, Plaintiff does not dispute Defendant's assertion that she and Defendant had consensual sex in the summer of 2018, but she disputes that she consented to sex after her hand was broken.  Plaintiff otherwise does not appear to dispute the accuracy of Defendant's statement of facts, though she disputes its completeness and significance.

Defendant does not specifically reply to Plaintiff's statement of facts, but his motion disputes all of Plaintiff's allegations of wrongful conduct.  He admits Plaintiff's hand was broken on May 28, 2018, but he denies that he caused that injury.

In short, the only facts during the parties' relationship in Lander that appear undisputed are: (1) Plaintiff was an adult at all times relevant to her claims; (2) the parties lived together in an intimate relationship for the summer of 2018; (3) Plaintiff's hand was

broken on May 28, 2018; and (4) the relationship ended in September 2018 when Plaintiff asked Defendant's family to come take him home to Tucson, and his father did so.

II.     *Legal Standards for Summary Judgment*

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard requires "there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. "Summary judgment is inappropriate where there is a genuine dispute over a material fact, 'that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Roberts v. Jackson Hole Mountain Resort Corp.,* 884 F.3d 967, 972 (10th Cir. 2018) (quoting *Anderson*, 477 U.S. at 248).

"[W]e examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence." *Roberts,* 884 F.3d at 971, n. 3. Initially, the moving party carries the burden of proving the nonexistence of a genuine dispute of material fact. *Tolman v. Stryker Corp.*, 108 F. Supp. 3d 1160, 1162 (D. Wyo. 2015), *aff'd,* 640 F. App'x 818 (10th Cir. 2016). The moving party satisfies this burden by "either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*; *see* Fed. R. Civ. P. 56(c)(1)(A)– (B). Once the burden is satisfied, "the nonmoving party must support its contention that a

genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute." *Tolman*, 108 F. Supp. 3d at 1162–63 (citing *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

III.    *Analysis*

A.    *Statute of Limitation for Plaintiff's First and Second Claims*

Defendant argues that Plaintiff's first and second claims (entitled respectively "battery and/or sexual assault," and "strangulation of a household member") are barred as untimely.  The parties agree that both causes of action should be treated as claims for battery and/or sexual assault.

> In the first claim, Plaintiff alleges:
>
> Defendant Kautz committed the offense of battery against Ms. Murphy when he intentionally, knowingly, or recklessly caused bodily injury to Ms. Murphy by:
>     a. Punching Ms. Murphy in the stomach on May 24, 2018;
>     b. Punching Ms. Murphy on May 28, 2018 and thereby fracturing her hand; and
>     c. Other intentional actions.
> In the alternative, Defendant Kautz was sexually motivated when he came into Ms. Murphy's bedroom and broke her hand on May 28, 2019 [sic], thereby making that battery also a sexual assault.

ECF No. 1 ¶¶ 59-60.  In the second claim, Plaintiff alleges Defendant strangled her to the point of unconsciousness in July 2018.[1]  In her response brief, Plaintiff identifies the same three alleged incidents for these claims: the punches of May 24 and May 28, 2018 and the strangulation to the point of unconsciousness in July 2018.

---

[1] Plaintiff appears to assert that Defendant strangled her more than once.  The incident she identifies for the second claim is apparently the only instance that she alleges strangulation to the point of unconsciousness.

Defendant argues that these claims are barred by the one-year statute of limitation for civil assault and battery claims.  Wyo. Stat. § 1-3-105(a)(v)(B).  The statute provides:

> (a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:
> * * *
> (iv) Within four (4) years, an action for:
> * * *
> (C) An injury to the rights of the plaintiff, not arising on contract and not herein enumerated;
> * * *
> (v) Within one (1) year, an action for:
> * * *
> (B) Assault or battery not including sexual assault.

Wyo. Stat. § 1-3-105(a)(iv)(C), (v)(B).  Thus, civil claims for "assault or battery not including sexual assault" must be brought within one year.  But civil claims for sexual assault are instead subject to the catchall, four-year period of § 1-3-105(a)(iv)(C). *McCulloh v. Drake,* 2001 WY 56, ¶¶ 34-38, 24 P.3d 1162, 1171 (Wyo. 2001).

Plaintiff recognizes that her claims for battery are "outside the statute of limitations for battery listed in W.S. § 1-3-105(a)(v)(B)."  ECF No. 1 ¶ 9.  The complaint asserts several grounds for why that limitation period did not apply or should be tolled.  However, in her response, Plaintiff does not pursue any theories of tolling.  The Court considers the tolling arguments waived or conceded.

Plaintiff argues that the exception for sexual assault applies to her first and second claims, and thus these claims are timely brought within four years of the claims' accrual.  Specifically, Plaintiff argues the three incidents count as sexual assaults for purposes of § 1-3-105(a)(v)(B) because they were part of a larger pattern of sexual assault, in which Defendant intimidated Plaintiff into later having non-consensual sex.  Plaintiff also argues

6

these incidents were sexual assaults because she asserts that Defendant was sexually motivated in these incidents, deriving sexual pleasure from intimidating and using physical force to harm Plaintiff.

Section 1-3-105 does not define sexual assault.  Defendant interprets subsection (a)(v)(B) as impliedly relying on the criminal definition of sexual assault: "any act made criminal pursuant to Wyo. Stat. § 6-2-302 through § 6-2-319." Wyo. Stat. § 6-2-301(a)(v). Sections 6-2-302 through 6-2-319 require either "sexual intrusion" or "sexual contact." Sexual contact is "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts." Wyo. Stat. § 6-2-301(a)(vi).[2]  Sexual intrusion is defined as:

> (A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or
>
> (B) Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission.

Wyo. Stat. § 6-2-301(a)(vii).  Because none of the three incidents alleged for the first and second claims involved either sexual contact or sexual intrusion, Defendant argues these claims are not for sexual assault and therefore are not excepted from the one-year limitation period for battery and assault.

---

[2] "Intimate parts" are "the external genitalia, perineum, anus or pubes of any person or the breast of a female person." Wyo. Stat. § 6-2-301(a)(ii).

Plaintiff argues to the contrary, subsection (a)(v)(B) cannot impliedly rely on the criminal statute's definition of sexual assault because another subsection incorporates the criminal definition expressly:

> Notwithstanding subsection (a) of this section, a civil action based upon sexual assault as defined by W.S. 6-2-301(a)(v) against a minor may be brought within the later of:
>
> (i) Eight (8) years after the minor's eighteenth birthday; or
>
> (ii) Three (3) years after the discovery.

Wyo. Stat. § 1-3-105(b).  Subsection (b) is limited to civil claims alleging sexual assault of a minor and therefore does not apply here.

Plaintiff argues that under Wyoming law, "[w]hen the legislature specifically uses a word in one place, [courts] will not interpret that word into other places where it was not used." *Qwest Corp. v. Public Serv. Comm'n of Wyo.,* 2007 WY 97, ¶ 25, 161 P.3d 495, 501 (Wyo. 2007); *Merrill v. Jansma,* 2004 WY 26, ¶ 29, 86 P.3d 270, 285 (Wyo. 2004) (this rule is a "basic tenet").  Courts "presume that the legislature acts intentionally when it uses particular language in one statute, but not in another." *Rodriguez v. Casey,* 2002 WY 111, ¶ 10, 50 P.3d 323, 327 (Wyo. 2002).

Plaintiff further notes that "[s]tatutes prescribing a relatively short time period for suit should be construed narrowly to give the holder of a cause of action a fair opportunity to present his claim." *Metzger v. Kalke,* 709 P.2d 414, 417 (Wyo. 1985).  "When there is doubt as to which statute of limitations should apply, courts prefer applying the provision allowing the longer statute of limitations." *Nucor, Inc. v. Petrohawk Energy Corp.,* No.

14-CV-132-ABJ, 2015 WL 7009114, at *5 (D. Wyo. Nov. 12, 2015) (citing *Gustafson v. Bridger Coal Co.,* 834 F. Supp. 352, 357 (D. Wyo. 1993); *Metzger,* 709 P.2d at 417).

Thus, in Plaintiff's view, subsection (b)'s express reference to the criminal definition for sexual assault of minors precludes using that definition in subsection (a) for adults. Plaintiff argues that for adult victims, sexual assault should encompass not only the criminal definition but also assaults or batteries that have a sexual component or motivation.

Plaintiff does not cite any Wyoming law in support of that broad definition. She cites *McCulloh v. Drake,* 24 P.3d 1162, in which the Wyoming Supreme Court held that the exception in § 1-3-105(a)(v)(B) for civil sexual assaults of adults means that such claims are subject to the four-year catchall limitation period. The case involves tort claims by a former wife against her former husband for battery, sexual assault, and intentional infliction of emotional distress. Like Plaintiff here, the wife alleged that the husband engaged in a pattern of physical and sexual abuse. However, the wife brought those claims in the parties' divorce action. The district court denied the wife's request for a jury trial on her tort claims and found that she failed to prove sexual assault by a preponderance of the evidence. It did find the wife proved her intentional infliction of emotional distress claim as to an incident in which the husband held a pillow over her face briefly. The district court concluded the pillow incident was closest to the offense of battery and awarded punitive damages in the same amount as the fine for that offense. *McCulloh*, 24 P.3d at 1166.

On appeal, the Wyoming Supreme Court affirmed that a marital relationship does not bar an IIED claim. However, the appellate court found the joinder of the tort claims in

the divorce action was error; the tort claims required a jury, while the divorce action was properly decided by the judge.  Because of that procedural error, the appellate court reversed and remanded the tort claims.  Other than noting the wife alleged "various incidents of abuse led up to an encounter where the husband held a pillow over her face, which ultimately caused her departure from the relationship," *McCulloh,* 24 P.3d at 1166, the opinion does not describe the factual circumstances that led the district court to conclude the pillow incident was not a sexual assault and was instead most akin to a battery.

On the dismissed sexual assault claims, the Wyoming Supreme Court also rejected the "husband['s] attempts to argue that the statute of limitations for civil sexual assault is one year … base[d] … on the assumption that the elements for tortious sexual assault are the same as for assault and battery, citing two Connecticut cases." *McCulloh,* 24 P.3d at 1171-72.  But it did so without describing the facts that made plain why the wife's claim was for sexual assault, as opposed to ordinary assault or battery.  The court simply notes that some of "the incidents complained of fall within the appropriate period of time," and reversed and remanded for a jury trial.  *Id.* at 1172.  Thus, *McCulloh* does not expressly address how sexual assault is defined for purposes of § 1-3-105(a)(v)(B).

Nor has the Court's research located any other decision from the Wyoming Supreme Court directly on point.  In this circumstance, the Court must "endeavor to predict how that high court would rule."  *Amparan v. Lake Powell Car Rental Cos.,* 882 F.3d 943, 947 (10th Cir. 2018).  "In doing so, we do not limit ourselves to the technical holdings of the cases. Instead, both the holdings and considered dicta of the State Courts should be applied."

*Colorado Visionary Acad. v. Medtronic, Inc.,* 397 F.3d 867, 871 (10th Cir. 2005) (internal

quotation marks omitted).

> A federal court performing an *Erie* analysis may also consider appellate
> decisions in other states with similar legal principles and the general weight
> and trend of authority in the relevant area of law.  Finally, we are generally
> reticent to expand state law without clear guidance from the state's highest
> court for it is not a federal court's place to expand state law beyond the
> bounds set by the highest court of the state.

*Amparan,* 882 F.3d at 947–48 (internal citations and quotation marks and other notations

omitted).

Here, guidance from other Wyoming statutes strongly suggests that the Wyoming

Supreme Court would conclude § 1-3-105(a)(v)(B) impliedly uses for adults the same

criminal definition of sexual assault to which subsection (b) expressly refers for minors.

Although § 1-3-105(a)(v)(B) would be clearer if it expressly referred to § 6-2-301 *et seq.*

to define sexual assault, nothing in § 1-3-105 or any other Wyoming statute suggests that

the legislature intended a different meaning of sexual assault for adult victims' statute of

limitation than it did for minor victims.

When the Wyoming legislature refers to sexual assault in civil statutes, it does often

expressly refer to § 6-2-301 *et seq.* to define that conduct.  *See, e.g.,* Wyo. Stat. § 1-12-

116(a)(vi) (privilege for communications between family violence and sexual assault

advocate and victim); Wyo. Stat. § 14-2-309(a)(ix)(A) (parental rights termination); Wyo.

Stat. § 35-6-117 (exception from general prohibition of using public funds for abortions).

However, two civil statutes make plain that when the Wyoming legislature intends

to encompass a broader category of sexual misconduct than the criminal definition of

sexual assault, it says so expressly.  In the Wyoming Safe Homes Act, the legislature created an affirmative defense for tenants who vacate leased premises early due to "sexual violence" experienced there.  Wyo. Stat. § 1-21-1303.  For purposes of that act, "sexual violence" is defined as "any act of sexual assault, sexual abuse or stalking of an adult or minor, including any nonconsensual sexual contact or intrusion as those terms are defined in the Wyoming Criminal Code."  Wyo. Stat. § 1-21-1302(a)(iii).  In the Adult Protective Services Act, the legislature uses the term "sexual abuse" to mean "sexual contact including, but not limited to, unwanted touching, all types of sexual assault or battery as defined in W.S. 6-2-302 through 6-2-304, sexual exploitation and sexual photographing."  Wyo. Stat. § 35-20-102(a)(xxii).  The Wyoming legislature's use of the terms "sexual violence" and "sexual abuse" to define broader categories than the criminal definition of sexual assault strongly suggests that if the legislature intended a broader meaning for sexual assault in § 1-3-105(a)(v)(B), it would have used a different term.

Also, although the Wyoming Supreme Court has not yet directly addressed this issue, its existing opinions suggest this interpretation is consistent with existing practice.  In *McCulloh*, the district court found the pillow incident was *not* sexual assault and was instead closest to battery, regardless that it apparently occurred in a larger pattern of sexual abuse.  In another case, *Boyer-Gladden v. Hill,* 2010 WY 12, 224 P.3d 21 (Wyo. 2010), both parties defined the plaintiff's tortious sexual assault claim using the criminal definition – sexual intrusion and sexual contact.  The Wyoming Supreme Court did not reach the merits of the claim, but it also did not take issue with the parties' assumption that the criminal definition applied.

12

In short, construing the statute of limitation for adult sexual assault in the manner Plaintiff proposes would be inconsistent with the Wyoming legislature's intent and with the current practice reflected in *McCulloh* and *Boyer-Gladden*.

Plaintiff nonetheless points to Federal Rule of Evidence 415. This rule – entitled in relevant part "Similar Acts in Civil Cases Involving Sexual Assault" provides that in a federal civil case "involving a claim for relief based on a party's alleged sexual assault," the court "may admit evidence that the party committed any other sexual assault." That evidence "may be considered as provided in Rule[] 413." Rule 413 – "Similar Crimes in Sexual-Assault Cases" – defines sexual assault as

> a crime under federal law or under state law… involving: (1) any conduct prohibited by 18 U.S.C. chapter 109A;[3] (2) contact, without consent, between any part of the defendant's body – or an object – and another person's genitals or anus; (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body; (4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or (5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4).

Fed. R. Evid. 413(d)(4), (5). Plaintiff relies on Rule 413's fourth category – deriving sexual pleasure or gratification from physical force against another person.

The Court is not persuaded that the Wyoming Supreme Court would adopt Rule 413's definition of sexual assault for substantive law purposes. It does not appear that Wyoming courts have adopted a similar rule even for evidentiary purposes. More importantly, the first sentence of Rule 413 makes plain that the rule does not define sexual

---

[3] 18 U.S.C. Chapter 109A – Sexual Abuse -- states several offenses requiring a non-consensual "sexual act" or "sexual contact." 18 U.S.C. § 2246 limits those terms to the same types of conduct as sexual intrusion and sexual contact in Wyo. Stat. § 6-2-301.

assault for substantive law purposes: each category of evidence is *only admissible if that conduct is already a crime* under the applicable substantive law. Plaintiff does not cite any authority or reason to believe that Rules 413 and 415 represent the general trend or weight of authority defining sexual assault for substantive purposes.

More generally, interpreting the statute of limitation in the manner Plaintiff advocates seems likely to cause intractable problems in application. If a tort claim for assault or battery may be brought up to four years after the claim accrues – instead of only one year – based solely on an alleged sexual motivation, virtually any assault or battery between adult persons in intimate relationships would require a jury to resolve disputed facts before the statute of limitation could be applied. In contrast, the criminal definition has clarity from the outset: the only assaults or batteries against an adult victim that are excepted from the one-year limitation period are those that involve sexual contact or sexual intrusion as defined in Wyoming's criminal statutes. Parties will frequently dispute whether sexual contact or sexual intrusion occurred, but they will know from the outset which statute of limitations applies.

The Court thus predicts that the Wyoming Supreme Court would conclude sexual assault for purposes of § 1-3-105(a)(v)(B) has the same meaning as in the criminal offense: sexual contact or sexual intrusion is a required element.

Plaintiff's remaining arguments for these claims are unpersuasive. Plaintiff argues that the three incidents could constitute the offense of attempted sexual assault. But this would extend the language of § 1-3-105(a)(v)(B) – which makes no mention of *attempted* sexual assault. In any case, there is no reason to consider recognizing such a tort here, as

Plaintiff did not plead such a claim.  Plaintiff further argues that these three incidents support an element of sexual assault and therefore should be treated as claims of sexual assault.  But this only means that the alleged punches and strangulation are relevant to Plaintiff's claim for sexual assault.  It does not transform these incidents into sexual assaults in themselves.

In sum, Plaintiff's first and second claims are for batteries and are not for sexual assaults.  As such, these claims are subject to the one-year limitation period of § 1-3-105(a)(v)(B).  Plaintiff's first and second claims are untimely, and Defendant is entitled to summary judgment on these claims.

### B. Plaintiff's Intentional Infliction of Emotional Distress Claims

Defendant argues that Plaintiff's third, fourth and fifth claims should all be considered as claims for intentional infliction of emotional distress ("IIED") because Wyoming does not recognize torts of harassment (third claim) and voyeurism (fifth claim). Plaintiff does not dispute that assertion.

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  *Cook v. Shoshone First Bank,* 126 P.3d 886, 891 (Wyo. 2006) (quoting Restatement (2d) of Torts § 46 (1965), hereafter referred to as the "Restatement § 46").  The claim requires "that the defendant's conduct was extreme and outrageous and that the defendant intentionally or recklessly caused the plaintiff to suffer severe emotional harm."  *Kanzler v. Renner,* 937 P.2d 1337, 1341 (Wyo. 1997).

*1.     Extreme and Outrageous Conduct*

"[E]xtreme and outrageous conduct" is "conduct which goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized community." *Cook,* 126 P.3d at 891 (citing *Leithead v. Am. Colloid Co.,* 721 P.2d 1059, 1066 (Wyo. 1986) and the Restatement § 46, cmt. d).[4]

> The cases thus far decided, have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Restatement § 46 cmt. d (emphasis added, quoted in *Worley v. Wyo. Bottling Co.,* 1 P.3d 615, 628 (Wyo. 2000)).  On the other hand, "repeated harassment ... may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability." *Kanzler,* 937 P.2d at 1343 (internal quotation marks omitted).

Defendant appears to argue an even higher standard applies for IIED in the context of intimate relationships.  In the marital setting, the Wyoming Supreme Court particularly "emphasize[d] that a high standard for recovery shall exist and direct trial courts to be especially cautious when handling such claims." *McCulloh,* 24 P.3d at 1169.  However, in

---

[4] Wyoming has adopted Restatement § 46 in its entirety.  *R.D. v. W.H.,* 875 P.2d 26, 32 (Wyo. 1994).

an opinion issued the next year involving IIED in the context of intimate relationships, the court clarified that it does not "impose on a certain class of plaintiffs a burden greater than that set forth in the general rules of Restatement § 46 based solely on the subject matter of the complained conduct and the relationship of the parties." *Bevan v. Fix,* 2002 WY 43, ¶ 18, 42 P.3d 1013, 1020 (Wyo. 2002).

Here, Defendant first argues that the IIED claim must be based on facts separate from Plaintiff's other claims, *i.e.,* "acts committed by Defendant other than assault and battery (which are time-barred) or sexual assault, which is a separate claim." ECF No. 31 at 10. Defendant cites *Worley*, 1 P.3d at 628, but the case does not stand for this proposition. Rather, *Worley* adopts the analysis of the Restatement § 46 that requires conduct otherwise tortious must *also* be extreme and outrageous to support an IIED claim. In his reply, Defendant essentially drops this argument. In any case, Defendant's argument is incorrect. A claimant cannot recover the same damages more than once, but Wyoming does not preclude a plaintiff from bringing more than one tort claim – including IIED – based on the same facts. *See, e.g., R.D. v. W.H.,* 875 P.2d 26, 32 (Wyo. 1994) ("The [IIED] claims clearly were not parasitic to the wrongful death claims even though they arose out of the same circumstances.").

Defendant next argues that none of his alleged misconduct rises to a level that a reasonable jury could find extreme and outrageous. However, as noted above, the district court in *McCulloh* awarded damages and punitive damages on an IIED claim that involved a husband briefly holding a pillow over his wife's face. The opinion does not describe the

17

full circumstances, but brief suffocation with a pillow is similar to the July 2018 strangulation that Plaintiff asserts here.

One of the cases that Defendant attempts to distinguish, *Sisco v. Fabrication Techs., Inc.,* 350 F. Supp. 2d 932, 936–37 (D. Wyo. 2004), likewise involved conduct similar to Plaintiff's assertions here. *Sisco* does differ from the case at bar because the defendant was the plaintiff's supervisor, and thus there was an alleged abuse of power not present in the intimate relationship in this case. *Kanzler* identifies an abuse of power as one of "several recurring factors" that have been present in IIED claims surviving a preliminary motion. *Kanzler*, 937 P.2d at 1343. But the supervisor's alleged conduct in *Sisco* was similar to much of what Plaintiff contends Defendant did to her: calling the plaintiff obscene names, attempting to insult and humiliate verbally and physically, rubbing his genitals on the plaintiff without his consent, urinating on among other things his belongings, forcing him to clean bathrooms that the supervisor intentionally soiled with his urine, and requiring him to return to physical work that his previously injured arm and leg could not tolerate. This case involves several of those types of conduct, plus Plaintiff asserts Defendant was physically violent in punching, strangling,[5] and forcing Plaintiff to submit to non-consensual sex. Again, the Court recognizes that Defendant disputes those contentions.

But taking the facts in the light favorable to Plaintiff as required at this phase, she has come forward with her deposition and affidavit asserting numerous instances and facts

---

[5] Plaintiff appears to assert that Defendant strangled her more than once, but only once to the point of unconsciousness. ECF No. 36-2 ¶ 6 (Plaintiff's affidavit). In the complaint, Plaintiff also alleges that Defendant spit and urinated on her (ECF No. 1 ¶¶ 37, 69(e)), which would draw a further parallel to *Sisco*, but Plaintiff does not appear to assert those facts in response to the present motion.

regarding Defendant's alleged physical, sexual, verbal and psychological misconduct described in detail in her response brief. She has also produced copies of text messages with Defendant. When interpreted in the light favorable to Plaintiff (and with her further factual assertions regarding her responses therein), a reasonable jury could find the text messages support her assertions that Defendant's conduct was extreme and outrageous.[6] Plaintiff has thus shown material fact disputes in support of the first element of this claim.

### 2.    *Severe Emotional Harm from Defendant's Alleged Conduct*

Defendant also argues, however, that Plaintiff cannot show the second element of this claim – severe emotional harm or severe emotional distress. ECF No. 31 at 10. Wyoming law defines the severe emotional harm element as follows.

> Emotional distress includes "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." … The Restatement requires that the emotional distress be "so severe that no reasonable man could be expected to endure it."

*Kanzler,* 937 P.2d at 1343 (quoting Restatement § 46, cmt. j). "The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like." Restatement § 46, cmt. j. "Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe. The rule stated is not, however, limited to cases where there has been bodily harm." *Id.*, cmt. k.

---

[6] Defendant himself also submitted additional exchanges of text messages that a reasonable jury could find support Plaintiff's assertions. ECF No. 31-14 at 13-15. A reasonable jury could also instead believe Defendant's view of the facts, including the significance of their respective text messages.

"It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Hoblyn v. Johnson,* 2002 WY 152, ¶¶ 39, 55 P.3d 1219, 1232 (Wyo. 2002). In *Kanzler,* for instance, the court found a material fact dispute on this element where the plaintiff testified "that she was frightened and anxious" after an alleged incident of non-consensual sexual contact from the defendant, presented evidence of mental health treatment and diagnoses from that and other alleged incidents, and the plaintiff testified to having continuing problems. *Kanzler,* 937 P.2d at 1343-44. Proof of mental health treatment is not necessarily required, but the plaintiff must do more than recite unpleasant or negative emotions and feelings that she experienced. *Hoblyn,* 55 P.3d at 1231-32. "[S]tatements that they experienced offensive feelings and emotions without further evidence of the effect on their lives were insufficient to establish a prima facie case of severe emotional distress." *Id.* at 1232.

In this case, Defendant argues Plaintiff cannot show severe emotional harm from any conduct. Later in his brief, Defendant specifies that Plaintiff cannot show severe emotional harm once the facts in support of her untimely battery claims are omitted – which as noted above, is an erroneous view of Wyoming's law of IIED. But Defendant's motion was sufficient to raise the severe emotional harm element as to all of his alleged conduct. Defendant cites excerpts of Plaintiff's deposition and a few pages of text messages between the parties. ECF No. 31-14 (Defendant's Ex. N). In the cited excerpts, Plaintiff identifies several incidents and types of misconduct that she asserts for her claims. She did not there identify emotional harm from this conduct, but she also was not asked to do so in those

excerpts.[7]  In his reply, Defendant argues that Plaintiff did not address this element in her response.

Plaintiff's briefing of the severe emotional harm element is only a sentence, but she does address it and cites evidence in support.  Plaintiff asserts that "she suffered extreme emotional distress as a result of Mr. Kautz's physical violence, sexual violence, degradation, humiliation, and control."  ECF No. 36 at 16 (citing Complaint at pp. 9-12 and Plaintiff's Ex. 7, Plaintiff's responses to Defendant's interrogatories nos. 4, 17, 20, 21).  Plaintiff's cited allegations in the complaint do not suffice as evidence, so the Court focuses on her cited responses to Defendant's interrogatories.[8]

In Plaintiff's interrogatory responses, she relies on her experts and medical records to identify the harms she has suffered from Defendant's alleged conduct.  Although Plaintiff's response brief does not cite her expert designations, Plaintiff filed them in the docket consistent with this Court's requirements.  ECF Nos. 21, 28.  They include mental health experts opining on the psychological harm Plaintiff has suffered from Defendant's alleged conduct.  In response to interrogatory no. 4 regarding physical and mental injuries or conditions, Plaintiff also asserts "mental and emotional harm, including PTSD, panic, and anxiety.  I have discussed this in detail with my therapist, who will testify about the harm caused by Matt."  ECF No. 36-7 at 4-5.  In another of the responses, Plaintiff states that she "feels that I will never be mentally or emotionally the same after the … abuse

---

[7] The Court has the full transcript of Plaintiff's deposition, but the Court is not obligated to search for uncited support for either party's position.
[8] While a party generally cannot introduce their own interrogatory responses as evidence at trial due to the hearsay rules, the Court considers this evidence here on the presumption that Plaintiff intends to testify at trial.

inflicted upon me by Matt.  At this point, I believe I will need therapy for the rest of my life to address this trauma."  *Id.* at 12.  She identifies four medications that she asserts she takes for panic attacks, poor sleep, and anxiety as a result of Defendant's alleged conduct.  *Id.* at 14.  And she identifies two mental health conditions that she was diagnosed with in 2018 and 2019: PTSD and panic attacks.

Although the Court is not obligated to review the record for evidence that Plaintiff did not cite in her brief on this element, the Court has also reviewed Plaintiff's affidavit in support of her response.  ECF No. 36-2.  Plaintiff asserts that after Defendant introduced physical aggression during sex, at times he would trap her under his weight, and she struggled to breathe.  She is unsure whether the struggle to breathe was from his weight, her anxiety, or claustrophobia.  She further asserts that "[a]t times, I would get into a really scared state during physical abuse and start to hyperventilate and cry."  ECF No. 36-2.

Plaintiff's interrogatory responses, her reliance on designated mental health experts' opinions, and her affidavit suffice to show that reasonable people could find that she suffered severe emotional harm from Defendant's alleged conduct.  *See, e.g., Kanzler,* 937 P.2d at 1343-44; *cf., Hoblyn,* 55 P.3d at 1232 (implying that claim would survive summary judgment if the plaintiffs had presented evidence that they needed mental health treatment due to the conduct, or "evidence of the impact of this alleged distress on their lives such as missed work, inability to sleep or engage in hobbies and activities previously enjoyed, diminished ability to socialize or handle the necessary functions of everyday life, or memory loss").  A reasonable jury could find either way on this element.  Accordingly,

because Plaintiff shows material fact disputes on both elements of her IIED claims, Defendant has not shown he is entitled to summary judgment on these claims.

*IV.*    *Conclusion*

For each of the above reasons, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  It is granted on Plaintiff's first and second claims for relief.  It is denied on Plaintiff's third, fourth and fifth claims for relief.

Dated this 16th day of December, 2021.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE